Mr. Lennard, please proceed. Have you noticed, Mr. Lennard, we always save the fun cases for last? I certainly agree that this is a fun case. It's a case that comes out of anti-dumping countervailing duty area, but it's procedural. Your Honor, may it please the Court, my name is Mark Lennard. I represent Sumecht NA in this interlocutory appeal in the Court of International Trade's denial of Sumecht NA's motion for preliminary injunction. If the injunction in the countervailing duty case is dissolved, are you prevented from immediately refouling your motion for a preliminary injunction in the underlying anti-dumping duty case? Effectively, yes. And the reason is because the Court failed to follow this Court's binding precedent in Eugene and American Signature. And dismiss those, or dismiss Sumecht NA's argument regarding Eugene and American Signature as merely split. Well, why does that affect, as I understood Judge Waller's question was, why aren't you adequately protected by the statutory injunction in the C.V. case? And I might. It comes, you've demonstrated in this case the speed with which you can move when you have to. Because you jump, you know, Johnny on the spot to go in and ask for your T.R.O. here. So you're all primed and you're ready to go, right? And I might add, you have the government's word. Well, I have. I mean binding word in court. Sort of, I mean. We're going to try to bind it down. Excellent. Let me see if I can address your question. The first point is, there is, and this is the basis on which the Court of National Trade denied your petition for reconsideration, as I understand. But you're protected, right? Right. They said that we already had our relief because of the injunction in the C.V. case. Right, but you are fully protected now, correct? Not exactly. Well, can the customers liquidate those entries? While the C.V.D. case is ongoing and that injunction is in place, the answer is no. However, there's no telling what's going to happen with that case and when it's going to end. And at the moment that you become worried that that protection is gone, you're Johnny on the spot with a T.R.O. However, at this point. Who controls hardware? Excuse me? Hardware. Yes. It's a parent company. It's a Sumic company. Are they represented by the same council? They are, indeed. So you're going to know, aren't you? I will, but the issue is not so much one I'll know, although that is a question. In the other case, there are other parties and that case could be dissolved and the injunction is dissolved in that case. But what will happen at the Court of International Trade, which is already. Can't your party stand in? Well. You're involved in the other case. Hardware is involved in the other case and Sumic N.A., which is the affiliated importer, is in this case. But the Court of International Trade has already refused to follow Eugene and American Signature, which address the unique. You can say they refused to follow that when your original P.I. was turned down. And in the motion for reconsideration. I mean, that is to say, in the motion for reconsideration, the judge acknowledged. What's the motion for reconsideration decision say actually about the case law? In the reconsideration, the judge said or acknowledged that American Signature was out there, but said that this court had two grounds for providing relief in American Signature. And one of them was that there was no other relief available. And on that ground, rejected the motion for reconsideration. The court said no. But Eugene and American Signature look at Shinyai and say availability of Shinyai relief is uncertain. Yes. So they're showing irreparable harm. Here, assuming I'm correct, that the government has represented unequivocally that if Sumic prevails on the merits of this case, the CIT has the power to grant Sumic relief, including the authority to order the government to liquidate Sumic entries. Now, that's in the record. And that Sumic would be entitled to refunds plus interest on any overpayments. That's in their briefing, also in the record. Assuming that's correct, that distinguishes, right? Not exactly, because that's their opinion. And they don't speak for the Court of International Trade or this court. They speak for themselves, though. They do. They've just bound themselves. Yes, yes, they have. But the only thing they can't speak for is that the CIT would actually order reliquidation. Exactly. I mean, so if the CIT rules on your merits in favor of you and doesn't grant reliquidation, then you're up here on appeal. I don't know if the government's willing to vouch for your attorney's fees as well. Right? Right. But that's the only missing link. Well, they said they wouldn't contest reliquidation. But they didn't say they wouldn't contest or appeal the merits. And so we could be up here again. And, you know, the timing of these two cases, they're on separate tracks. There's nothing that binds the timing of this case to the timing of the CVD case. And this is a point that was made in the— Well, no, but they—you may get an appeal on the merits. But if you win on the merits below, then you're going to want a order to—in essence, you want reliquidation. You may not get it. You may have to come up here on appeal. If you win on appeal, guess what's been running all the time? Interest. You're like a banker. You stand to gain. But there's no guarantee that the CVD case will continue. And this is a point that was made in the case Ad Hoc— That's in connection with the injunction that's in place now. Correct. But what Judge Wallach and I have been asking is, what bars you from running into court and making your—again, your huge, giant argument at that point in time? I certainly could. But the Court of International Trade has already made its— Judges don't like to—if injunctions are issued on a discretionary basis, appellate judges don't like to throw that over. Appellate judges don't like to reach issues unless they have to. Why should I have to deal with this difficult question about Eugene and American Signature now when I may never have to? Because the Court of International Trade has already showed that it's not going to follow Eugene and American Signature. And— Well, then you get an appeal. I don't know that I— I mean, I could, you know, come up here and go down and come up and go down. But I think that the point is there are two things here. Is attorney inconvenience a reason for an injunction? No, but the—I think the relevant fact here is that the Court has already said that it won't. And the CVD litigation is on a different track. And that preliminary injunction is different. The Court may have said that because the Court thinks you've got such a slam-dunk winner on the merits. And why don't you just hurry up and let me litigate that and issue the order telling them if they go ahead and liquidate, they reliquidate? But there's still a possibility of appeal. And while the appeal is pending, there wouldn't be any—there wouldn't necessarily be any reliquidation. And the entire time, the entries are unprotected as the—when the CVD case, if it ever—if it continues or ends, that date is uncertain. Tell me this. Yes. Shinyai seems to say that relief is available under 1581R. It does. However— However— This Court in American Signature— Right, right. So Signature and Eugene seem to say not always. They say in the preliminary injunction setting, the Court of International Trade should not see Shinyai as undermining a claim to irreparable harm, which is defined by Zenith. The liquidation is irreparable harm. Which is why, as long as the government gave me that guarantee, why should I have to resolve that? Those are presidential cases. Again, the government does not speak for the court, for any court. And so while they might not contest it, the court may disagree that Shinyai applies to this case. There's no guarantee that— And if the court—if the CIT disagrees, what recourse do you have? Appeal to this court. Okay. And then if we disagree, what happens? Well, I still have an appeal to the Supreme Court, I suppose. But that would all be only on the issue of whether or not you can attempt to get the money back, even if you have a clear victory on the merits, right? Suppose I think 1516a clearly, unequivocally, and unambiguously falls in your favor. So now the question we're debating now, as I understand it, is whether or not you'll even have an entitlement to reliquidation to right the wrong that would be done to you. We could win the case but lose. So it's possible—is it possible that if both the CIT and the Federal Circuit aren't willing to give you the break that comes vis-a-vis Eugene and—I can't remember all the names. American Signature. American Signature, then you would lose across the board, even though you may have a completely meritorious claim under the statute. It's possible, yes. And so would that be the irreparable harm that you're predominantly arguing, or one of them? Yes, it is that if there's not an injunction in place, then the entries could liquidate, and then that would moot our case, our claim under Zenith. And if no court were to extend chignon to the circumstances of this case, then despite winning on the merits, we would effectively lose because the entries would be liquidated. You wouldn't be allowed to reliquidate. We wouldn't be allowed to reliquidate. So that would be irreparable harm. That is irreparable harm, exactly. Now this—in ad hoc shrimp trade action committee, this is 56 F sub second 1383. Why does this court get the benefit of Eugene and American Signature? I'm sorry. Your argument is that your client should get the benefit of those. Yes. I'm saying why, on the facts. Why does your case line up with them? Well, both of those are cases that were brought under the CIT's residual jurisdiction, 1581I, 28 U.S.C. 1581I. Both were challenging liquidation instructions similar to Chenier. And the Court of International Trade denied the preliminary injunction in those cases, citing in part Chenier and citing also alternative relief in protest actions. You're under the same jurisdiction. Those were under 1581A, the protests, the alternative actions and alternative relief. And even in those cases, which were fairly similar to Chenier, this court found in Eugene said that the scope of Chenier is a difficult one for which the resolution is not obvious and concluded that the issue is sufficiently complex that we should resolve it only in a setting in which it has been litigated by the parties and decided by the trial court. So Chenier is not something that the Court of International Trade is supposed to address in the preliminary injunction setting. You are in your rebuttal time. Do you want to save the rest? Yes, I would. Thank you very much. Very good. Let's hear from Mr. Miller. Mr. Miller. Good afternoon, Your Honors. May it please the Court. An injunction in this circumstance is unnecessary because Sumit cannot demonstrate irreparable harm as a result of the potential for the government to liquidate its entries. First, the government is enjoined from liquidating its entries as a result of an injunction in the separate CBD proceeding. But secondly, fundamentally with respect to the law, pursuant to 28 U.S.C. 2643 C.1, the trial court would have the authority to order reliquidation should Sumit prevail on the merits. And we have represented as… Why are you… Why is this case here? And the reason I say it is 1516A is completely clear and unambiguous. They're right. You're wrong. What argument do you have against that? In terms of the merits, Your Honor. You're correct. I don't understand why this case is here. 1516A is crystal clear in their favor. Why are we doing this? We disagree with their interpretation of the statute. If their interpretation is adopted, Commerce would be able to unilaterally delay the effectiveness of a court decision solely by delaying the publication of the Timken Notice. And certainly Commerce does not have that type of discretion. If we look at the framework of 1516A… Forget the framework. Let's just look at the exact language of 1516A. Shall be liquidated in accordance with the determination of the Secretary if they are entered on or before the date of publication in the Federal Register. Were these before the date of publication in the Federal Register? Yes, Your Honor. They were filed. But also the statute needs to be considered with respect to the next sentence, which says that if we look at specifically 1516AE, liquidation in accordance with the final decision of a trial court. So it goes on to say that the… But there's a really… I don't understand that argument. There's a really good reason for this too, right? Like we want to hold people to the rate that they have notice of because these Jiangsu notices are private and confidential, correct? But until they're published in the Federal Register, people are not aware of them, except for whoever the party was in that case. Well, Musuma and Carver knew that they were assigned a China-wide rate before judicial review, and this is reflected at Appendix 197 of the record. I'm sorry. Let me ask my question one more time. Aren't Jiangsu III orders confidential opinions? There were two. There was a public decision and a confidential decision, yes, Your Honor. Okay. And so then later, it's supposed to be within 10 days is my understanding, is that right, comes a Timken notice? Of the court decision, yes, of a decision that's adverse to commerce. And that Timken notice is required to be published in the Federal Register, correct? Yes, Your Honor. But in this case, it wasn't published within 10 days like it was supposed to be. It wasn't published for 39 days, is that right? I believe it was 49 days, Your Honor. 49. Okay, right, because, yeah, because you were 39 days late. That's right, because of the 10-day. So it wasn't published for 49 days. So if it wasn't published and the statute unambiguously says on or before the date of publication in the Federal Register, I don't understand why we're here. You would like the statute to be different, but we interpret it as it's written. And you may have good policy reasons why it should be different, but we interpret it as it's written. And it's written really clearly, so I don't understand. Certainly, Your Honor. So I would direct the court's attention to the Great American case, which we cite in our briefs, as well as the Dixon-Ticonderoga case, 468F3rd at 1355. And in both of those instances, it discusses a failure of an untimely notice. And in both instances, the failure was analyzed under the rule of prejudicial error, which is derivative of the APA. And pursuant to the rule of prejudicial error, the administrative action for which there should be notice will only be set aside if the claimant can demonstrate substantial prejudice. Here, SUMEC cannot demonstrate substantial prejudice. Subsequent to the remand determination, they knew that Commerce had assigned them the China-wide rate. And this is where I direct the court's attention to Appendix 197, which SUMEC reflects that they participated in the remand determination. And as part of the remand determination, Commerce assigned them the China-wide rate. Now, yes? This is all on the likelihood of success and on the merits, right? Yes, Your Honor, it is. And the issue, there's been no adjudication of that below. No, Your Honor. In fact, the issue before us is whether or not there should be a PI. So what are we supposed to do with the representations and warranties that the government's given us? Were you counsel below, Mr. Miller? I was, Your Honor, yes. So you made that unequivocal representation? I did, Your Honor. If SUMEC is to prevail on the merits, the government would not challenge the trial court from ordering reliquidation. And for that reason, because the trial court has the authority, pursuant to 28 U.S.C. 2643c1, because the trial court has that authority, SUMEC cannot demonstrate a reputable harm for purposes of obtaining an adjudication. Will you commit that you're not going to challenge jurisdiction under I? Are you challenging the jurisdiction in the underlying case under I? No, Your Honor. In fact, that case is fully submitted. Last week, we argued the merits before the trial court. And will you warrant that you won't at any time challenge jurisdiction under I? In this case. In this case, as the facts currently stand, no, we would not be challenging jurisdiction under I. Are you in a position to make that a representation for the government? Well, I – I mean, I'd like to make this bankable. Certainly, I haven't had an opportunity to talk with my reviewers. But I will say that based upon the facts of this record, and we're down to the end of the case, the case is fully submitted to the trial court. You won't challenge the power to order reliquidation, right? Exactly. We have not challenged jurisdiction. And we have unequivocally stated on the record that should SUMEC prevail on the merits, the trial court has the authority to order reliquidation. And on that basis – They went on the merits, and you will not challenge reliquidation, and you won't appeal here? Well, in terms of the merits of the statutory interpretation that Judge Moore was asking about, I can't make any representation with respect to that. But in terms of whether – I'm just trying to find out what's bankable here. Yeah, yeah. The underlying statutory interpretation might come up here if the court gets it. Oh, most certainly, Your Honor. There is definitely a legitimate dispute between the parties as to the interpretation of 1516A. You say so. I don't agree. Go ahead. But with respect to the – But not as to whether or not this case fits under I. Exactly, Your Honor. We have not challenged jurisdiction under 1581I. The case is fully submitted to the trial court. The trial court could render its determination on the merits at any day, and we have indicated on the record that should SUMEC prevail – Your interview is that this case qualifies for Shinyai if they went on the merits. If they went on the merits, yes. We would believe that the rule of Shinyai would apply, which means that the trial court would have the authority to order reliquidation. Does it have to? Well, that is the relief that SUMEC is seeking. Does the trial court have to order reliquidation, or do they have the discretion to decide that they don't have to or shouldn't? Well, currently the government is enjoined from liquidating the entry, so if that injunction remains in place, no liquidation would occur. It's hypothetically possible in the litigation of this case that they can went on the merits and the judge can say, I'm terribly sorry, I'm not going to order reliquidation. That could occur, but if that were to occur – The judge can do all kinds of things, right? Well, certainly the trial court – But it would be a reversible error, wouldn't it? Well, that was my point, is that SUMEC would then be able to appeal to this court and have – Well, that's what I'm trying to get at. You're not going to challenge them on that appeal. There's – well, certainly would be permitted to appeal a trial court making a determination – I'm just trying to cover them in all ways, shape, and form, except for their attorney's fees on the appeal up here, which I don't think you have to pay. We would not be paying attorney's fees, Your Honor. But you're exactly right. The trial court in its own discretion can decide what authority it has. We have represented that we believe the trial court has the authority to order reliquidation. If, in fact, we lose on the merits of the actual statutory interpretation, that question would come up for appeal. I understand that. If they would win on the merits and the trial court makes a determination that they do not have the authority, SUMEC would be able to appeal the trial court's decision of their own purview of their authority. But the government – What if we decided that the trial court was right, they didn't have the authority to reliquidate? Well, if they didn't have the authority to reliquidate, then – Even though they won on the merits in a little-eyed case. Right. And it came up here. Well, we're certainly not in that circumstance, Your Honor. And the government isn't joined from liquidating SUMEC's entry. So I think – I'd be on their side on the appeal up here. Well, we would certainly stand behind our representations that the trial court has the authority. Well, I would make you file a brief in supporting that. I don't know whether we would file a brief in support. All I can represent to you today is that we – the government's position is that the trial court does have the authority to order reliquidation in this particular circumstance should SUMEC prevail on the merits. Let me say this, Mr. Miller. You were in front of me for close to 16 years when I was on the bench down there, and my experience was I could take your word to the bank. Yes, Your Honor. We certainly have made that representation both in writing – You personally. Yes, Your Honor. I could take your word to the bank. Yes, Your Honor. And for the specific reason that we have made that representation, that the trial court can order reliquidation – Well, that distinguishes the case from Ujijin. Most certainly. We especially said in Ujijin the government is not taking any position. And we made that exact distinction in our briefs. And for that exact reason, based upon that representation, is the reason why we – that SUMEC cannot demonstrate – So really, am I right that all this comes down to is who's going to hold the money while the statutory interpretation of 1516A gets decided, right? Who holds the money? Certainly. Right, that's all that this comes down to is who's going to hold the money during that time. Well, yes, and also whether SUMEC would be able to pay. Well, the money that they think they should pay as opposed to the money that Moore wanted, the government's already got that money. So they paid cash deposits at a rate of 13.18%. The trial court made a determination that the actual rate should be 238.95%. They have not paid the cash deposits on that difference. So currently the government is left exposed for that liability. Should we prevail in the merits and SUMEC not be able financially to make that payment? We made an assertion in your brief that you suspect or are concerned they wouldn't be able to. Is there a factual foundation for that assertion? SUMEC did not make any representations to the trial court that it could not pay these duties. And because they could not establish their lack of payment, the trial court made a finding that they have not demonstrated irreparable harm in the financial sense, in the ability to pay sense. If we don't issue a preliminary injunction and due course fairly quickly, the goods will be liquidated at the higher – no, not – so long as the injunction, the CV, sits in place, nothing happens. That's correct, Your Honor. Only if that injunction, statute of injunction, goes away, then there would be liquidation at the 230 or whatever, and they'd have to pay the money up. And then the question would be they'd hope they'd get it back later after winning on the merits and getting a reliquidation order. Yes, Your Honor. And in that separate CVD proceeding? And they'd get interest in that case. They would, Your Honor. Yes, that's correct. The separate CVD proceeding, the matter would be fully submitted to the trial court pursuant to the current scheduling order on June 20, 2019. So we know that at least from here to June 20, 2019, there is no irreparable harm because the government would be enjoined at the very earliest date prior to the court reaching the merits in that CVD proceeding. But in the balance of the equities, you assert there's no guarantee SUMEC will be able to pay duties in the future. I guess my question is, do you have any factual foundation? Is this just the, there's no guarantee anyone, there's no guarantee Donald Trump will be able to pay next year, there's no guarantee anybody will be able to pay. Is it just sort of one of these throwaway sentences? Or is there any evidence that gives you reason to think SUMEC will not be able to pay that should be taken into account in this calculation? There's no evidence that would be used to believe that SUMEC could not pay. However, the statutory framework requires the deposit of cash deposits to protect the public fisc. Because in every instance, we don't know whether an importer... Okay, so this would be an argument you would make in every single case no matter what, that there's no guarantee this person will be able to pay. Certainly, Your Honor. And that's the reason why the statute requires the deposit of cash deposits. It's security for the government that as the case is litigated, should the government prevail, we won't be left exposed in the event that the importer... But I assume that you think that the same logic should not apply to the government. We should assume the government is always able to pay. Well, yes, Your Honor. Yes, Your Honor. So for the reasons that SUMEC cannot demonstrate irreparable harm, both because the government is enjoined and because the trial court does have the authority with respect to the government's perspective for ordering reliquidation, should SUMEC prevail on the merits, we request that the court sustain. In the context of an equitable pursuit, i.e. seeking an injunction, could the government ask for a bond? The trial court rules do contemplate the idea of a bond. However, the trial court has not provided for that instance, and so we're left with the protections afforded by the statute, which is just cash deposits should the government prevail on the merits of the case. And they get interest back if you hold the money during all this? Yes, Your Honor. The statute provides statutory interest for this money. What's the statutory rate? Your Honor, I don't know that off the top of my head. So I don't know if that makes more sense to leave your money there and let it run or to give it to your friends at Goldman Sachs. I'm not certain, Your Honor. Thank you. Thank you very much, Mr. McCann. Or Mr. Miller, I'm sorry. Mr. Lenhardt? Thank you, Your Honors. The Department of Commerce explained that while the CBD appeal is going on, they cannot enjoin liquidation. But that by itself is not a bar to preliminary injunction here. Nat Hockshrim, the Court of International Trade, said that injunctions that are not identical are not duplicative. What's your response if the CIT offers you an injunction, but requires the posting of a bond? We would address that requirement at the time. I don't know that my client would be opposed to or in favor of it. I can't say right now. The other case is Advanced Tech Materials. This is slip-up 2013-42 at the Court of International Trade, where the court there said, Nowhere in the statute is it indicated that overlapping or complementary injunctive relief is impermissible. This is something that may be unique to ADCBD because you have these companion cases, companion orders, and you have overlapping periods of review. And so when a company is involved in both the anti-dumping side and the countervailing duty side, it may appeal both cases, and both cases may go on. I've found no instance of the Court of International Trade objecting to or refusing to grant a preliminary injunction because of overlapping periods. In fact, the Department of Commerce and the Department of Justice have not, until this case, as far as I know, objected for that reason either. The Department of Commerce, in its argument, was reluctant to provide a guarantee of no appeal. Well, he shouldn't have to. He can appeal 1516A on the merits. Certainly he can. Certainly he can. But what that means is that there's an extended time, and the time, the track on which the CBD appeal and this appeal under the anti-dumping order are going, they're disconnected, and there's no time limit on CBD. How are you harmed if you're going to get reliquidation and get interest? Well, in this particular case, the lowest rate that is possible is the 13.18% that we have deposited. So we wouldn't get any additional interest. No, no, no. But, I mean, if you're forced to cough up the larger amount and then sit and wait through some appeals, you get a reliquidation order, you're going to reliquidate, you're going to get your 238 back plus interest. This is an instance or circumstance that is not unusual here. Rates go up and down in these anti-dumping duty reviews, and the preliminary injunction protects both parties in terms of, you know, if the rate goes up, then the party doesn't. But it doesn't protect the government if you go out of business or if you're unable to pay. Sure, and although the United States government has good credit, there's no guarantee that it would be returned also, as you mentioned earlier. I think that, you know, if I'm a betting gal, I would put my money on red, white, and blue. I don't disagree with you. Nonetheless, it's not an unusual circumstance. How much money are we talking about here? What's the difference between 13% and 240% or 238? That number is confidential, but it's on appendix 234. Can you give a range or not even? That would be too much. I'm not asking you to reach confidentiality. 13%, you know, 236%. I mean, I think my arms need to go a little bit longer. It's on appendix page 234. I'll look at it. Thank you. I thank both counsel. The case is taken under submission.